IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Peter Schaf, etc.,                  Case No. 3:22 CV 1240

         Plaintiff,             ORDER DENYING
                                   MOTION TO DISMISS
    -vs-
                                   JUDGE JACK ZOUHARY
O-I Glass, Inc., et al.,

         Defendants.

## INTRODUCTION

Plaintiff Peter Schaf spent his career working for Defendant O-I Glass, Inc. During his employment, Schaf invested money in O-I Glass's retirement funds, administered by Owens-Illinois Employee Benefits Committee. After retirement, Schaf sued Defendants in 2022, alleging they breached their fiduciary duties and decreased the value of his retirement account (Doc. 1).

Defendants move to dismiss the Amended Complaint (Doc. 25). The matter is fully briefed (Docs. 19, 25, 26). This Court issued questions (Doc. 27) and held a hearing.

## ERISA

The Employee Retirement Income Security Act ("ERISA") was enacted to protect the interests of retirement-plan participants by establishing standards of conduct for plan fiduciaries. 29 U.S.C. § 1001(b). ERISA requires that plan administrators discharge their duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

This fiduciary duty is "derived from the common law of trusts." *Tibble v. Edison Int'l*, 575 U.S. 523, 528 (2015). In accord with trust law, an ERISA fiduciary must exercise prudence in selecting investments at the outset, continually monitor the investments, and adjust them accordingly. *Id.* at 529. Similarly, a fiduciary must be loyal to the plan participants, meaning "the fiduciary's operative motive" cannot be "further[ing] its own interests." *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1170 (6th Cir. 2022) (citation omitted). If a fiduciary breaches these duties, retirement investors may bring claims in federal court. *Id.* at 1162.

Schaf alleges Defendants breached their fiduciary duties of care and loyalty by: (1) offering an imprudent and untested investment lineup; (2) failing to monitor investment expenses; (3) failing to remove consistently underperforming funds; and (4) allowing excessive fees (Doc. 23 at 31–34). In response, Defendants argue the Complaint fails to state a plausible ERISA claim. To survive a motion to dismiss under Federal Civil Rule 12(b)(6), the Complaint must contain sufficient factual matter, accepted as true, to state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in Schaf's favor. *Id.* at 555–56.

## CommonSpirt & TriHealth

Defendants' argument rests primarily on two recent cases: *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022) and *Forman v. TriHealth, Inc.*, 40 F.4th 443 (6th Cir. 2022).

In *CommonSpirit*, plaintiff alleged the plan administrator "breached its duty of prudence by offering several actively managed investment funds when index funds available on the market offered higher returns and lower fees." 37 F.4th at 1164. The complaint "point[ed] to three-year and five-year periods in which three actively managed funds . . . trailed related index funds in their rates of return." *Id.* at 1166.

The Sixth Circuit held this was insufficient to state a plausible ERISA claim: "Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision -- largely a process-based inquiry -- that breaches a fiduciary duty." *Id.* at 1166. While "pointing to an alternative course of action . . . will often be necessary to show a fund acted imprudently," simply pointing to a fund with better performance does not suffice. *Id.* A plaintiff must also provide "evidence that an investment was imprudent from the moment the administrator selected it, that the investment became imprudent over time, or that the investment was otherwise clearly unsuitable for the goals of the fund based on ongoing performance." *Id.*

Plaintiff in *CommonSpirit*, also claimed, "the plan's recordkeeping and management fees were excessive," but failed to allege that the services provided were "equivalent to those provided by the plans comprising the average in the industry publication [cited in the complaint]." *Id.* at 1164, 1169. And again, plaintiff provided no sufficient comparators. Instead, plaintiff compared the defendants' fees "to some of the smallest plans on the market, which might offer fewer services and tools to plan participants." *Id.* at 1169. Thus, the complaint failed "to allege that the fees were excessive relative to the services rendered," and was, therefore, insufficient "to create an inference that [defendants were] imprudent to choose recordkeeping fees of this amount." *Id.*

In *Forman v. TriHealth, Inc.*, three employees alleged their plan administrator breached its duty of prudence and acted disloyally by failing to monitor the plan's investments. 40 F.4th at 447. The complaint alleged the average plan expenses "were almost twice as high as other comparator plans they identified." *Id.* at 449. It also identified "available alternatives in the same investment style that charged lower fees and performed better over a three-year period" for eight of the funds offered. *Id.* But, as with *CommonSpirit*, this wasn't enough.

3

The Sixth Circuit held that plaintiffs failed to plausibly plead the alternatives "were equivalent to the selected funds" and therefore could not "create an inference of improper process for selecting these funds even if cheaper funds appeared in the market." *Id.* at 449. And plaintiffs' excessive-fee claims suffered from the same fatal flaw -- they failed to allege "the fees could not be justified by the plan's strategic goals relative to their selected comparators. *Id.* Again, "administrators . . . have considerable discretion in choosing their offerings and do not have to pick the lowest-cost fund of a certain type where the long-run performance of another fund had the reasonable prospect of surpassing it." *Id.*

### SCHAF'S COMPLAINT

The Complaint in this case is different on multiple fronts.

***Imprudent and Disloyal Investment Lineup***

First, this case includes a unique scenario not present in the cases relied on by Defendants. Plan administrators have a duty to "select initial investment options with care." *TriHealth*, 40 F.4th at 448. According to the Complaint, Defendants selected an imprudent investment lineup from the outset: "Defendants constructed and maintained an investment lineup for the Plans unlike that of any similarly sized plan in the country" (Doc. 23 at 12). Specifically, the Harbor Target Date Funds ("TDFs") "have accounted for between 66% and 72% of the Plans' assets" (*id.* at 13). "Eleven of the Plans' fourteen investment options are Harbor funds, constituting 100% of the Plans' actively managed investments and nearly 80% of the Plans' total assets" (Doc. 26 at 3). Yet "no plan other than the Plans and Harbor's own defined contribution plan invest in the Harbor TDFs" (*id.* at 4).

4

The Complaint offers an underlying reason for this peculiar investment lineup. In 2001, O-I Glass sold Harbor to a third-party for $500 million (Doc. 23 at 9–10). That sale was "'subject to certain downward adjustments principally for changes in revenues based on sales or redemptions of shares of the Harbor Fund[s]'" (Doc. 23 at 10). "By maintaining the Harbor Funds in the Plans, Owens-Illinois was able to receive a higher sale price as removing them would have reduced the Harbor Funds' assets and, in turn, the cash consideration paid to Owens-Illinois" (*id.*).

These allegations of disloyalty differ from *TriHealth*, where plaintiffs claimed the plan administrator breached its duty "by choosing investments that would unduly profit third-party investment managers." *TriHealth.* 40 F.4th at 450. That claim failed because plaintiffs did "not make any allegations suggesting that 'the fiduciary's operative motive was to further its own interests,' as required to show a breach of the fiduciary duty of loyalty." *Id.* (citation omitted). This claim, on the other hand, alleges direct cash incentives for Defendants. Those allegations, taken as true, are sufficient to plausibly allege that Defendants were motivated by self-interest.

*Fees*

Next, excessive investment fees. The Complaint first compares the fees of Harbor Asset-Class Funds to the average fees for similar funds within the same asset class. It alleges: "In 2019, the most recent year for which average fee data is available, each of the Harbor funds charged fees that exceeded the average expense ratio for funds within the same asset class category among plans with $250 million to $1 billion, some by as much as 126%" (Doc. 23 at 16).

This allegation, in isolation, would likely be insufficient under *CommonSpirit*; but the Complaint goes a step further. Unlike that plaintiff, who compared actively managed funds to passive ones, Schaf compares the Harbor Funds to other similarly sized *actively* managed funds (Doc. 23 at 17):

| Harbor Fund (Ticker) | ICI/BrightScope Category / Morningstar Global Category | Fund Net Expense Ratio (2019) | Average 401(k) Fund Expense Ratio[19] | Percentage Fee Excess Over 401(k) Average | Average Actively Managed Expense Ratio (2019)[20] | Percentage Fee Excess Over Actively Managed Avg. |
|---|---|---|---|---|---|---|
| Harbor Bond (HBFRX) | Domestic Bond / U.S. Fixed Income | 0.43% | 0.34% | 35% | 0.28% | 54% |
| Harbor High-Yield Bond (HNHYX) | Domestic Bond / U.S. Fixed Income | 0.56% | 0.34% | 82% | 0.28% | 100% |
| Harbor Target-Date Funds | Target Date / Target Date | 0.66% - 0.79% | 0.35% | 89% - 126% | 0.53% | 25% - 49% |
| Harbor Large Cap Value (HNLVX) | Domestic Equity / U.S. Equity Large Cap | 0.61% | 0.39% | 56% | 0.42% | 45% |
| Harbor Capital Appreciation (HNACX) | Domestic Equity / U.S. Equity Large Cap | 0.58% | 0.39% | 49% | 0.42% | 38% |
| Harbor Mid Cap Growth (HNMGX) | Domestic Equity / U.S. Equity Mid Cap | 0.81% | 0.39% | 108% | 0.59% | 37% |
| Harbor Mid Cap Value (HNMVX) | Domestic Equity / U.S. Equity Mid Cap | 0.77% | 0.39% | 97% | 0.59% | 31% |
| Harbor Small Cap Growth (HNSGX) | Domestic Equity / U.S. Equity Small Cap | 0.80% | 0.39% | 105% | 0.70% | 14% |
| Harbor Small Cap Value (HNVRX) | Domestic Equity / U.S. Equity Small Cap | 0.80% | 0.39% | 105% | 0.70% | 14% |
| Harbor Int'l Growth (HNGFX) | International Equity / Global Equity Large Cap | 0.77% | 0.51% | 41% | 0.63% | 22% |
| Harbor Int'l (HNINX) | International Equity / Global Equity Large Cap | 0.67% | 0.51% | 31% | 0.63% | 6% |

"When looking solely at the industry's largest actively managed funds invested in similar styles to the Harbor funds, the excessive fees range as high as 100% above average" (*id.* at 16).

The Complaint also alleges the excessive fees extend to the MainStay S&P 500 Index Fund, the Plan's only passively managed investment. The fund had a 0.29% expense ratio in 2019, well above other similarly sized index plans (*id.* at 18):

| Index Fund (Ticker) | Fund Net Expense Ratio (2019) | MainStay S&P 500 Index Percentage Fee Excess |
|---|---|---|
| MainStay S&P 500 Index I (MSPIX) | 0.29% | n/a |
| Fidelity 500 Index (FXAIX) | 0.015% | 1,833% |
| Schwab S&P 500 Index (SWPPX) | 0.02% | 1,350% |
| Vanguard Institutional Index I (VINIX) | 0.035% | 729% |

Importantly, each of the lower-cost comparator funds "possesses an investment objective of producing returns that mimic or correspond to the performance of common stocks as represented by the S&P 500 index and incurs similar risks" (*id.*). Thus, this claim differs from *CommonSpirit*,

6

where the plaintiff alleged "no facts concerning other factors relevant to determining whether a fee is excessive under the circumstances." 37 F.4th at 1169 (citation omitted).

*Underperformance*

Finally, administrators must "monitor plan investments and [] remove imprudent ones." *TriHealth*, 40 F.4th at 448. According to the Complaint, during the period the funds were overcharging fees, they were also underperforming.

For instance, the TDFs, which were more expensive than similar plans, never fared well in comparison to similar plans (Doc. 23 at 25–26):

| Fund (Ticker) | Net Expense Ratio (Current) | 2016 (5-Year Return) | 2017 (5-Year Return) | 2018 (5-Year Return) | 2019 (5-Year Return) | 2020 (5-Year Return) | 2021 (5-Year Return) |
|---|---|---|---|---|---|---|---|
| Harbor Target Retirement 2040 Inst. (HARYX) | 0.72% | 8.66% | 9.10% | 3.48% | 7.48% | 11.28% | 11.81% |
| *Composite 2040 Index* | *n/a* | *8.70%* | *9.03%* | *3.61%* | *7.00%* | *10.30%* | *n/a*[28] |
| *S&P Target Date Through 2040 TR USD*[29] | *n/a* | *10.66%* | *11.52%* | *5.12%* | *8.48%* | *11.36%* | *12.81%* |
| American Funds 2040 Target Date Retire R6 (RFGTX) | 0.36% | 11.46% | 12.45% | 6.05% | 9.30% | 12.99% | 14.75% |
| JHancock Multimanager 2040 Lifetime R6 (JLIIX) | 0.59% | 10.25% | 11.30% | 4.68% | 8.20% | 12.49% | 13.81% |
| TIAA-CREF Lifecycle 2040 I (TCOIX) | 0.44% | 10.88% | 11.88% | 4.79% | 8.51% | 11.84% | 13.17% |

Likewise, the Harbor Asset-Class Funds fell below their self-selected prospectus benchmarks from their inception (*id.* at 20):

| Fund (Ticker) | Annualized Performance vs. Prospectus Benchmark Since Inception (as of 12/31/16) |
|---|---|
| Harbor High-Yield Bond Ret. (HNHYX) | -1.88% |
| Harbor Large Cap Value Ret. (HNLVX) | -0.86% |
| Harbor Mid Cap Growth Ret. (HNMGX) | -1.40% |
| Harbor Mid Cap Value Ret. (HNMVX) | -1.86% |

And, as *CommonSpirit* requires, the Complaint provides several adequate benchmarks for comparison. For instance, the Complaint alleges the Harbor International Fund trailed "less

7

expensive funds that share the same prospectus benchmark and have nearly identical investment strategies, objectives, and risks" (*id.* at 20–21):

| Fund (Ticker) | Net Expense Ratio (Current) | 2016 (5-Year Return) | 2017 (5-Year Return) | 2018 (5-Year Return) | 2019 (5-Year Return) | 2020 (5-Year Return) | 2021 (5-Year Return) |
|---|---|---|---|---|---|---|---|
| Harbor Int'l Ret. (HNINX)[24] | 0.69% | 4.89% | 5.25% | -1.92% | 3.61% | 6.66% | 8.57% |
| *MSCI EAFE NR USD* | *n/a* | *6.53%* | *7.90%* | *0.53%* | *5.67%* | *7.45%* | *9.55%* |
| JPMorgan Int'l Equity R6 (JNEMX) | 0.50% | 5.59% | 7.01% | -0.01% | 6.32% | 9.53% | 11.63% |
| MFS Inst. Int'l Equity (MIEIX) | 0.67% | 6.90% | 7.84% | 1.91% | 8.06% | 10.35% | 13.45% |
| T. Rowe Price Overseas Stock I (TROIX) | 0.66% | 6.74% | 8.25% | 0.79% | 6.02% | 8.47% | 10.38% |

This Fund had higher expenses and lower returns across the board. Similarly, it had a negative alpha score five consecutive years (*id.* at 22):

| Fund (Ticker) | 2016 (5-Year Alpha) | 2017 (5-Year Alpha) | 2018 (5-Year Alpha) | 2019 (5-Year Alpha) | 2020 (5-Year Alpha) | 2021 (5-Year Alpha) |
|---|---|---|---|---|---|---|
| Harbor Int'l Ret. (HNINX) | -1.29 | -2.21 | -2.38 | -1.95 | -0.68 | -1.05 |
| JPMorgan Int'l Equity R6 (JNEMX) | -0.59 | -0.51 | -0.47 | 0.48 | 1.95 | 1.75 |
| MFS Inst. Int'l Equity (MIEIX) | 0.89 | 0.65 | 1.35 | 2.54 | 3.10 | 3.99 |
| T. Rowe Price Overseas Stock I (TROIX) | 0.80 | 1.13 | 0.23 | 0.46 | 0.85 | 0.42 |

Such a negative score means "the manager made decisions that were worse than simply tracking the benchmark" (*id.* at 21).

And yet another example is the Harbor Mid Cap Value Fund, which had a -4.84 alpha score over the same 5-year period (*id.* at 24). The Complaint alleges the Fund "has, with little exception, trailed its prospectus benchmark and less expensive funds that share the same prospectus benchmark and have nearly identical investment strategies, objectives, and risks over all relevant five-year periods, spanning ten years of performance" (*id.* at 22–23):

| Fund (Ticker) | Net Expense Ratio (Current) | 2016 (5-Year Return) | 2017 (5-Year Return) | 2018 (5-Year Return) | 2019 (5-Year Return) | 2020 (5-Year Return) | 2021 (5-Year Return) |
|---|---|---|---|---|---|---|---|
| Harbor Mid Cap Value Ret. (HNMVX)[26] | 0.78% | 17.09% | 15.65% | 3.42% | 4.99% | 5.41% | 7.30% |
| *Russell Mid Cap Value TR USD* | *n/a* | *15.70%* | *14.68%* | *5.44%* | *7.62%* | *9.73%* | *11.22%* |
| American Century Mid Cap Value R6 (AMDVX) | 0.62% | 16.59% | 15.68% | 6.81% | 9.00% | 9.70% | 9.76% |
| JHancock Disciplined Value Mid Cap R6 (JVMRX) | 0.75% | 17.21% | 16.65% | 5.72% | 8.69% | 9.50% | 11.63% |
| Victory Sycamore Established Value R6 (VEVRX) | 0.54% | 15.57% | 16.42% | 7.50% | 10.50% | 12.02% | 13.96% |

Each of the above comparators "is benchmarked against the Russell Mid Cap Value index, is within the U.S. mid-cap value Morningstar Category, invests in . . . [similar] mid-cap securities" (*id.* at 22).

In all, the Complaint does not compare "apples to oranges" on performance. *CommonSpirit*, 37 F.4th at 1167–69. Rather, it compares the Harbor Fund to their self-selected prospectus benchmarks and other actively managed funds that are allegedly similarly in size and investment strategy. According to the Complaint, the Harbor Funds underperformed for years -- often from the very start. These allegations are sufficient to plausibly plead that the funds were "imprudent from the moment the administrator selected [them], . . . became imprudent over time, or [were] otherwise clearly unsuitable for the goals of the fund based on ongoing performance." *Id.* at 1166.

## CONCLUSION

"In assessing the prudence of a plan administrator's decision-making process, context often is destiny." *TriHealth*, 40 F.4th at 448. Placed in the context above, the Complaint provides sufficient benchmarks and outlines several facts that, if true, could demonstrate Defendants were imprudent or disloyal. The ultimate outcome of this case cannot be predicted. For now, the Motion to Dismiss (Doc. 25) is denied. Defendants' Answer is due **Friday, July 21, 2023**.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

June 30, 2023